All right, this case is 25-1376 Masek v. Peterson. Good morning, your honors. May it please the court. My name is Jake Hoyer and I represent Plaintiff Appellant Ms. Ashton Masek. Well, after listening to my colleagues this morning, I think the issue before the court on our case is relatively straightforward. And that is whether the district court erred in denying Ms. Masek post-trial relief under Rule 59. Essentially, whether the jury's no negligence finding under a negligence per se theory is clearly, overwhelmingly, or decidedly against the weight of the evidence. I'll organize my remarks this morning into those points that I think are most pertinent for the court's determination. That is the instruction given to the jury on the Denver Ordinance and that standard of care. The state of the evidence relevant to those issues. And lastly, the court's order denying Ms. Masek Rule 59 relief for a new trial. Ms. Masek pled both general negligence and negligence per se theories against Ms. Peterson. And the jury was instructed on a particular Denver Ordinance, namely a vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. Violation of this ordinance constitutes negligence. Ascertainment, by its plain language, connotes something above assumption or surmise. It means to make certain or make free from doubt. So, turning to the testimony that was relevant to that issue, it came from two witnesses. It was both the defendant, Ms. Paige Peterson, as well as the passenger who was seated beside her at the time of the accident. That being Ms. Addison Pierzina. What if the evidence had been from the passenger that the driver checked her mirror before she switched lanes? I saw her look in her mirror before she changed lanes. Well, Your Honor, I think when we consult the plain language of the ordinance, perhaps there are situations where checking your mirrors would satisfy the affirmative obligation to ascertain. However, as pointed out in the Davenport case, which is cited in the principal brief, in a situation where someone knows that a vehicle is near them or close behind them in the other lane, and they can see that in their mirror, but they perhaps misjudge the space and merge anyway and a collision occurs, that would fail the movement can be made with safety portion of the ordinance. And perhaps it would require a more active investigation beyond the mirrors, that is, looking out the window over one's shoulder to fulfill that obligation. So Ms. Mazik called Paige Peterson as a witness in her case in chief. What if the person who was in the other lane that you ran into was speeding? Under the ordinance, it's clear that the driver intending to merge into that lane has to ascertain that movement could be safe. I think it's obvious under the ordinance that you have to ascertain if there's a speeding vehicle or a vehicle going under the speed limit either way. The obligation is not removed. I've changed lanes in this town a lot of times, and people are often coming up very fast, but you can't really tell until you're over in front of them and they're mad. Well, that's fair, Judge Carson. However, there would need to be still some predicate evidence from which to draw the conclusion that some investigation was performed to ascertain the location of the vehicle, or perhaps not see it in the first place. I guess my concern is, is there — you don't have affirmative evidence that she didn't look, that she didn't at least make an attempt to ascertain that the jury could have latched on to? No, Your Honor. Ms. Pierzina, who had provided the testimony that she trusted Ms. Peterson to operate her vehicle because she knew her to be a cautious driver who always looks, who calls out to the other occupants of the car, when asked on cross, you provided this testimony that she's a cautious driver who always looks and calls out. That did not happen in this case, correct? No. Wait, wait, wait. That's not the way it went. The question was, you never saw Page check the lane next to her. Not. It didn't happen. And merely the fact that she didn't see her doesn't mean it didn't happen. Judge Murphy, I believe the question immediately after that, there was that initial question of you did not see her check, correct? No. But immediately following that question, plaintiff's counsel hearkened back to the cautious observations on prior occasion testimony and asked, did you see that? It was asked in a leading way. So that did not happen in this case, correct? No. But that was a compound question. That was two questions in one. And I know that you and your college friends have a running joke regarding Page and how she always looks before she switches lanes and calls out to everyone to let her know that is clear. And that did not happen in this case, correct? I think . . . I'm sorry, counsel. Yes to . . . no to one and yes to two. I mean, that's not how it was answered. It was answered, that's correct, Judge Carson, with a blanket no. That would stand that it's just a blatant denial of the activities described in the question. Well, or it could be, it could be that the compound activities called out and looked. Well . . . Because we know that she doesn't know if she looked or not because she said she didn't see it. Are you referring to Ms. Peterson or Ms. Pierzina? Ms. Pierzina. Right. Pierzina said that she didn't see her. There was no testimony from . . . let's see. And that was Pierzina who also got the compound question, right? Yes, that's correct. So she could have been answering no, both of those things did not happen. Yes. So, I mean, I guess my point is a jury could take this evidence and maybe say, well, maybe she did look. Well, I don't think so, Your Honor, because the account from both Ms. Peterson and Ms. Pierzina, when asked in a non-leading way, what do you recall about the crash, their recollection of events aligned, such that Ms. Peterson said, I was going down the road, I activated my turn signal, I turned, and there was a crash. And Ms. Pierzina effectively said the same thing as to her memory. Neither of them seeing the other vehicle prior to the collision or merging lanes. And so when we consider the compound question and the fact that Ms. Peterson did not see the vehicle, it depicts clearly a set of events where there's a sort of seamless motion out of the center lane into either a turn across the left lane or eventually a merge to turn at the light up ahead. Did you try the case? I was third chair for the case, Your Honor. Did you examine any of these witnesses? No, Your Honor. Okay. Were you present? I was present, Your Honor. Was the question asked of Ms. Peterson, did you look in your mirror? No, Your Honor. And when it was asked of Ms. Peterson, what do you recall, her memory of going down the road, activating the turn signal, and then moving into the left lane. It was not clear that there would be a reason to disturb that testimony. She had organically offered. She could have answered any way she wanted. But her natural recollection of events omitted any sort of investigation of the lane in between those three things. But it also left open for the jury to consider that nobody had established that she didn't look. It was your burden of proof. It wasn't her burden of proof. That's true, Your Honor. However, that the predicate of looking was dispelled by Ms. Pierzina later on cross, and that was particularly telling given that Ms. Pierzina had testified, I saw her be cautious and employ those behaviors that would amount to perhaps ascertaining that the lane was vacant on prior occasions that day as well as other times in the past. So the question was harkening back to that testimony of things she had observed about Ms. Peterson that day. And so the omission that she did not see it, answering no to that question, was affirmative evidence that she did not see it. And that was not controverted by it. It definitely was affirmative evidence that she didn't see it. I agree. So when we turn to the district court's order, the motion under Rule 59, the district court identified certain disputes in the facts, those being, and we've talked about some of them, the speed of the non-party in the roll-to-vehicle, the activation of a turn signal before moving, and the intent behind the maneuver. However, no matter how those disputes would be resolved in favor of Ms. Peterson, they are not probative in and of themselves of the action of looking, which is distinct from blinkering or perhaps intending to merge. A merging vehicle would have the obligation under the ordinance to ascertain the lane is vacant just as much as any vehicle turning across that lane of travel. I see I have 3 minutes 30 seconds left, so I would like to reserve the rest of my time for rebuttal, if I may. Thank you. Thank you. Good morning, Your Honors. My name is Aaron Bell. May it please the Court, I represent the defendant, Appellee Paige Peterson. The jury in this case carefully considered the evidence over many hours and reached the verdict that Ms. Peterson was not negligent and that she did not cause Ms. Masick's damages. The trial court carefully considered Ms. Masick's motion for a new trial and held that the jury's verdict was not clearly, decidedly, or overwhelmingly against the weight of the evidence, because that's the standard. And the jury's verdict and the trial court's order should stand. On appeal, the panel reviews the trial court's denial of the motion for a new trial on the basis that the jury's verdict is against the weight of the evidence for a manifest abuse of discretion. An abuse of discretion is a judicial action which is arbitrary, capricious, or whimsical. The trial court's order was none of those things. The trial court considered the evidence in the light most favorable to the prevailing party, that's Ms. Peterson. Bearing in mind that the jury has the exclusive function of appraising credibility, determining the weight to be given to any piece of testimony, drawing inferences from facts and evidence, resolving conflicts in the evidence, and reaching the ultimate conclusion of the fact. And that's what the trial court did here. In this case, it was Ms. Masick who had the burden to prove each element of her claims. And that includes the statutory claim that was under discussion by counsel for appellant. The burden is on Ms. Masick to establish that Ms. Peterson did not ascertain that she could move to the other lane. It's not an affirmative defense. It's not something that Ms. Peterson had to prove. For that reason, the jury didn't have to have a particular theory of what did happen. All the jury had to decide was that Ms. Masick didn't meet her burden of proof. However, in her order, the trial court laid out one example of a sequence of events that supported by the evidence that could have explained what happened. As Judge Retterig has, I think, quite eloquently stated it, the jury could have reasonably concluded that Ms. Merrill, that's the other driver, was further behind defendant in the left lane, such that defendant did not see her and believed it was safe to maneuver into the left lane. The jury could have also reasonably concluded that it was Ms. Merrill's speed that caused the collision. The jury heard evidence that Ms. Merrill was speeding. They were entitled to believe that evidence. Well, slightly different than that, wasn't it, that she was going with the flow of traffic? No. The testimony, and this is from Ms. Pierzina, was that she believed Ms. Merrill's vehicle was going very fast. And, of course, the jury, as the finder of fact and weigher of evidence and drawer of inferences, was entitled to believe that that high speed that Ms. Merrill was traveling at caused her to not be visible to Ms. Peterson and then to come up quickly on her left and cause the collision. That's a conclusion the jury could have reasonably drawn and that would have been sufficient to support their finding that Ms. Peterson was not negligent. Now, the verdict form was structured in a way that if the jury determined that Ms. Peterson was not negligent, they didn't say anything about Ms. Merrill. They only have a percentage for Ms. Merrill if they go to the other verdict form. Here, they had no occasion to do that. Once they decided that Ms. Peterson was not negligent, that was that with respect to the negligence question. I guess the verdict form was a comparative fault verdict form, so if they found negligence on the part of Ms. Peterson, they could also apportion fault to other people. Correct. So there were two verdict forms. There's verdict form A, which is what they completed, and that had three questions. Did the plaintiff have damages? Was the defendant negligent? And was the defendant's negligence, if any, the cause of the plaintiff's damages? And that was that. The other form, which the jury would only fill out if they found the defendant did have negligence, also included the option to assign fault to the other driver, Ms. Merrill, since she was a non-party. But they had no occasion to do that here because they determined that Ms. Peterson was not negligent at all. So as I mentioned, the jury could believe that Ms. Merrill was speeding because of the testimony that they heard. They could believe that Ms. Peterson signaled, because that was testimony that they heard, and they could infer from that that, in addition to signaling, Ms. Peterson took the related action of checking the adjacent lane. And furthermore, they could believe that Ms. Peterson checked the adjacent lane because they heard testimony that it was her practice to do so. And under Rule 406, that's evidence that can be used for that purpose. What was Merrill's testimony? Merrill said that she wasn't speeding, but the jury didn't have to believe her. The jury could believe only one witness. They could believe some testimony from a witness and not other testimony. The fact that there was contradictory evidence about some or all of these matters isn't a basis to discern the jury's verdict. The jury gets to decide which of that evidence they believe and how they weight it. And in Appellant's reply brief, they cite to the Rivera v. Union Pacific case for the proposition that Rule 406 doesn't apply here. In that case, it stands for the exact opposite proposition. In that case, the court essentially said that you can't have a habit of being careful. That's just a very general thing. But you can, in specifically distinguished cases such as this one, where a habit shows a regular response to a repeated situation. Here, the repeated situation is changing lanes. Anyone who drives changes lanes all the time. And the repeated and the regular response is to check the other lane. And there was testimony in the case that the jury heard that it was Ms. Peterson's practice to do that. Was there a contemporaneous objection to the practice testimony? I don't believe there was. And it certainly has not been preserved on this bill. And there was some questioning regarding the specifics of Ms. Peterson's testimony. I think Judge Carson identified a number of the issues with that already. I won't belabor it. One thing also that's worth noting is that both the question, did you see Ms. Peterson check the lane next to you? And then the long compound question. Both concluded with correct. And the response to that with a single word answer, no. So on the plain face of what was said, the jury could certainly reasonably conclude that the answer to those questions was no. Rather than yes, as the appellant would like it to be. The jury could certainly have seen it that way. Furthermore, even if the jury understood Ms. Pierzina to be testifying, that on this particular occasion, Ms. Peterson did not check the lane. And I don't think that's at all what the testimony says. But even if one were to believe that, they didn't have to believe that testimony. The jury could instead believe that Ms. Peterson acted in accordance with her habit and practice. And disagreement with how the jury chose to weight those respective pieces of testimony, is not a basis to overturn their verdict. One issue that was discussed in the briefing, I don't believe we've talked about today, is the third question on the verdict form. And that relates to causation. Ms. Mazik likewise had the burden to prove that any negligence of Ms. Peterson, assuming for the sake of argument that there was any, was a cause of Ms. Mazik's claimed injuries. And that includes under the statutory claim. That there still must be a finding of causation, even if one were to determine that Ms. Peterson violated the statute by not ascertaining. What were the nature of the alleged injuries? She, there were a lot of them. They were, broadly speaking, a spinal injury, which was alleged to have led to all kinds of pain, and discomfort, and physiological symptoms related to the spine. And also alleged to have caused a suite of neurological injuries, including difficulty in focusing, and thinking, and things of that nature as well. As a result of that, there was a great deal of testimony at the trial, talking about those injuries. Because there were a lot of injuries claimed. There were multiple experts put forward to support them. And the parties spent a great deal of time discussing them. And now in the appellant's briefing, they make the argument that because closing allegedly focused on this issue of injury, then there was really no dispute about liability. That's not how it works. Argument of counsel is not evidence. And when the trial court was determining whether the jury's verdict was against the weight of the evidence, she was appropriately looking at the evidence that was presented to the jury, not what counsel may or may not have said in the 20 minutes that they got to do a closing. You were talking about causation. Yes, I was. Thank you. So causation, the jury found that there was no causation. And that's a separate... Yes, but the question was, the question on the verdict form is, did her negligence cause this? And they already said there was no negligence. So the answer has to be no. I don't see how that gets you to a harmless error. Well, the way the jury verdict form was structured, though, it didn't say if you find no negligence, go to the end of the form and sign it. It required the jury to look at each and every question. I don't see how that changes the perspective I just gave. It said, was she negligent? No. Did her negligence cause injury? Well, if I said there was no negligence, how could it have caused any injury? Isn't that the natural reading of that verdict form? Possibly, Your Honor. I mean, the thing about saying, if you answer this question this way, you don't have to go, you're finished. That's just a stylistic thing on how a trial judge chooses to articulate their verdict forms. But here, it didn't say that, but it said, was she negligent? No. Did her negligence cause this accident? Well, of course not. She wasn't negligent. Isn't that the right way to read that? Well, I think, I mean, certainly the jury found that she wasn't negligent, and it's obvious. It would seem, I agree, that given that the jury found that she wasn't negligent, that they wouldn't find causation. But they were three separate findings that the jury was asking. And one last comment. There was some discussion about those two different pieces of Ms. Birzina's testimony. First, did you see her check the lane? She said she just didn't see it. And then, supposedly, and I don't think this is a fair reading of the question, but supposedly the second question was, she didn't, you know, she had a habit of doing it, and that didn't happen here. Well, those can't really both be right. Because if she didn't see it, then she wouldn't know if it happened here or not. Certainly the jury could interpret it that way. So even if we're one to read that second piece of testimony, as the appellant would like the court to do, although I don't believe the court should, it was nonetheless contradictory to the testimony immediately before it, and the jury, as the determiner of credibility and the waiter of evidence, was entitled to believe the first part and not the second. Thank you, counsel. Time's expired. Thank you, Your Honor. We've got some rebuttal from Mr. Hoyer. Judge Carson, you asked a question about the speed testimony. And to clarify, it was, there was that testimony from Ms. Pierzina that although she had never visually observed the Merolt vehicle, she felt from the impact of the crash that it was going much faster than ours. Ms. Merolt did not recall what her speed was. There's no testimony from Ms. Peterson as to her exact speed, so it really rested on that comparative. But the passenger's testimony was not based on visual observation. It was based on the sense of the impact. That's correct, Judge Murphy. That's my point. There was some discussion from Mr. Bell regarding causation, and Judge Murphy, I think you stated the issue nicely. Yeah, I wouldn't waste your bullets on that one. Fair enough. And then with going back to Ms. Pierzina's testimony and the questions of not checking the lane and not employing the behaviors observed earlier, the testimony of what she had observed Paige do on prior occasions and on that day was put to Ms. Pierzina with the clear qualifier, temporal qualifier, I'm not talking about the accident, Ms. Pierzina. We'll get to that in a moment. But what did you observe on prior occasions? And she confirmed all these things she had seen Ms. Peterson do. So it can't be fairly characterized as habit testimony in the sense that it was expressly distinguished from the instance of the crash at the time that testimony was elicited. I thought the testimony went differently. I thought the passenger said she knows her to be a most cautious driver and she always looked. And that she drove that way on the day of the accident. I thought she said that. Let me find the exact place. It did generalize and then temporize. The form of the question, and I believe it was Mr. Bell who conducted that examination, was on prior occasions, so on days before, what did you observe? And then she gave her testimony about the caution, et cetera. And then he said, prior to, we're not talking about the crash, we'll get to that in a moment. This is the lawyer talking. This is the lawyer. Did you see her act like that the same day? And she said, yes, same driving style on the day. Doesn't that mean she always looked? And that she looked on the day in question? Well, it certainly doesn't mean she looked at the time of the accident because that's contained in the question itself, that he was not talking about the accident. Furthermore. This whole thing is about. Right. And that's why it didn't draw an objection at the time is because it hadn't been wed to the facts of the moments leading up to the collision. How could the proposition she always looked and she drove that way on the day of the accident mean that she always looked and she looked at the time of the accident or just previous to the accident? And it seems like a natural flow. Or at least a reasonable inference that the jury could draw. Well.  I don't think that's fair, Judge Murphy. And that's what attracted the specificity of the habit testimony question on cross-examination is that although on direct it was never specifically combined with the circumstances of the accident, it drew that question on cross-examination to which she said no. Right. And I believe I'm out of time. Thank you, counsel. Your time has expired. You're excused. Thank you. The case is submitted.